UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ORLIN MARGARITO GOMEZ
LACAYO,

Petitioner,

v.                                                    CAUSE NO. 3:26-CV-502-CCB-SJF

BRIAN ENGLISH,

Respondent.

## **OPINION AND ORDER**

Immigration detainee Orlin Margarito Gomez Lacayo, representing himself, filed

a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging he is unlawfully

confined in violation of the laws or Constitution of the United States. The Warden

answered the petition, and filed a supplement response ordered by the court.

Mr. Gomez Lacayo has replied. The petition is ready to be decided.

## BACKGROUND

Mr. Gomez Lacayo is a native and citizen of Honduras who was admitted to the

United States as a lawful permanent resident in 2012. ECF 7-1 at 32. On December 7,

2018, he was convicted of the crime of rape in the third degree and sentenced to ten

years' probation. *Id.* He was served with a Notice to Appear on January 30, 2020,

charging him with removability pursuant to 8 U.S.C. § 1227(a)(2)(E)(i) based on the rape

conviction being a crime of child abuse. *Id.* at 33. While his immigration proceedings

were ongoing, he was released from detention in April 2021 after more than a year of detention and placed on an ankle monitor with regular check-ins with ICE.

Mr. Gomez Lacayo was ordered removed to Honduras on February 22, 2023, and the immigration judge denied his application for cancellation of removal. ECF 7-1 at 49. Mr. Gomez Lacayo appealed to the Board of Immigration Appeals (BIA). While his appeal was pending, he was arrested and re-detained by Immigration and Customs Enforcement (ICE) on October 16, 2025. ECF 7-1 at 59. The BIA dismissed his appeal on March 17, 2026, and Mr. Gomez Lacayo filed a petition for review with the Second Circuit on March 24, 2026. ECF 7-2 at 2-5; *see Gomez Lacayo v. Blanche*, No. 26-761 (2d Cir. filed Mar. 27, 2026). He moved for a stay of removal, which remains pending. However, petitioners who seek review of removal orders in the Second Circuit are subject to a "forbearance policy," under which the government has agreed not to remove a petitioner while the petition for review is pending. *See In re Immigr. Petitions for Rev. Pending in U.S. Ct. of Appeals for Second Cir. (Forbearance Agreement)*, 702 F.3d 160, 162 (2d Cir. 2012). Should the government seek to remove the petitioner during the forbearance period, the government must notify the court and the petitioner, and the petitioner may apply to the Second Circuit for a stay of removal. *Id.*

Mr. Gomez Lacayo filed this habeas petition in April 2026, arguing his re-detention was unlawful because he was not given a proper custody redetermination during this period of detention. He says the immigration judge denied his request for a custody redetermination because he had already received a custody redetermination hearing during his earlier period of detention.

2

In answering the petition, the Warden argues that Mr. Gomez Lacayo's detention is lawful because he filed his habeas petition while in the 90-day removal period under 8 U.S.C. § 1231(a)(1), (a)(2), during which detention in mandatory.

## SUBJECT MATTER JURISDICTION

The Warden argues that this court lacks subject matter jurisdiction over the petition. This court has thoroughly considered its jurisdiction to review immigration detention under 8 U.S.C. §§ 1225, 1226, and 1231. For the reasons previously stated, jurisdiction is secure. *See Pho v. Noem*, No. 3:25-CV-977-CCB-SJF, 2025 WL 3750684, 1-4 (N.D. Ind. Dec. 29, 2025) (Brisco, J.) (regarding § 1231); *Liang v. English*, No. 3:25CV1052 DRL-SJF, 2026 WL 835853, at 1 (N.D. Ind. Mar. 26, 2026 (Leichty, J.) (regarding § 1231); *Mejia Diaz v. Noem*, No. 3:25cv960, 2025 WL 3640419 (N.D. Ind. Dec. 16, 2025) (Brisco, J.) (regarding § 1225 and § 1226); *De Jesús Aguilar v. English*, No. 3:25cv898, 2025 WL 3280219, at 2-5 (N.D. Ind. Nov. 25, 2025) (Leichty, J.), *appeal docketed*, No. 26-1145 (7th Cir. Jan. 26, 2026) (regarding § 1225 and § 1226).

## MERITS

Turning to the merits, the Warden argues Mr. Gomez Lacayo entered the "removal period" when the BIA dismissed his appeal on March 17, 2026. The Warden argues the pending petition for review does not affect start of the removal period because the Second Circuit did not issue a stay of removal. Mr. Gomez Lacayo is, instead, subject to a forbearance agreement, under which the government has agreed not to remove noncitizens with petitions pending before the Second Circuit in most

cases. The Warden argues the forbearance agreement is not the equivalent of a stay for purposes of when the removal period starts.

Detention during the removal period is mandatory while the government works to effectuate the removal. 8 U.S.C. § 1231(a)(1)(A), (a)(2)(A). According to § 1231(a)(1), the 90-day removal period begins on the latest of:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). Here, whether Mr. Gomez Lacayo is detained under 8 U.S.C. § 1226 or § 1231 depends on the whether the forbearance agreement is equivalent to a court-ordered stay for purposes of § 1231(a)(1)(B).

The district courts in the Second Circuit are split as to whether the forbearance policy is equivalent to a stay of removal for purposes of 8 U.S.C. § 1231(a). *Compare Dorville v. Searls*, No. 23-CV-6075 (CJS), 2023 WL 4107981, at *5 (W.D.N.Y. June 21, 2023) ("This Court is among the minority of district courts in the Second Circuit that does not consider the forbearance agreement between the Second Circuit and the Department of Homeland Security to be the equivalent of a stay."), *with Vazques v. Garland*, No. 1:21-CV-00477 EAW, 2021 WL 3741589, at *2 (W.D.N.Y. Aug. 24, 2021) ("Numerous judges in this Circuit, including the undersigned, have found that the forbearance agreement amounts to a court-ordered stay of removal and that detainees with a pending [Petition for Review] and motion to stay are thus not detained pursuant to § 1231."), *and Yusuf v. Edwards*, No. 18-CV-3605 (GBD) (BCM), 2019 WL 4198798, at *5 (S.D.N.Y. July 2, 2019)

4

("[B]ecause of the government's forbearance policy, an alien who files a [Petition for Review] and a stay motion in the Second Circuit obtains the functional equivalent of a stay order, such that § 1231 no longer governs his detention and he may not be denied a bond hearing on that basis.") (quotation marks omitted).

It appears that § 1231(a)(1)(B) is designed to start the removal period—the period in which "the Attorney General *shall* remove the alien from the United States"— when nothing stands in the way of actually carrying out the removal.[1] 8 U.S.C. § 1231(a)(1)(A) (emphasis added). Thus, there is logical sense in holding the forbearance agreement is equivalent to a stay because the government is not acting to carry out the removal, despite the statutory command to remove the noncitizen. However, the court cannot ignore the plain language of the statute, which explicitly conditions judicial review delaying the start of the removal period on "if a *court* orders a stay of the removal of the alien." 8 U.S.C. § 1231(a)(1)(B) (emphasis added).

Further, the regulations contemplate that the government may exercise discretion not to remove a noncitizen who is otherwise removeable during the removal period. *See* 8 C.F.R. § 241.4(e)(1) (allowing ICE to release an alien when it determines, among other things, that "in the opinion of the Service, immediate removal, while

---

[1] As one district court noted, prior to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), when noncitizens filed a petition for review, they automatically received a stay of removal because courts of appeals lacked jurisdiction to review the deportation order of a noncitizen who had left the United States. *Narain v. Searls*, No. 19-CV-6361 (CJS), 2020 WL 95425, at *4 (W.D.N.Y. Jan. 8, 2020) (citing *Nken v. Holder*, 556 U.S. 418, 424-25 (2009)). IIRIRA altered that scheme by allowing courts of appeals to adjudicate a petition for review even after the noncitizen has left the country, and it repealed the presumption of an automatic stay upon the filing of a petition for review and instead required courts of appeals to make an individual determination as to a stay for each noncitizen. *Id.* The forbearance agreement serves to reinstate the prior presumption of an automatic stay. *Id.*

proper, is otherwise not practicable or not in the public interest"). And the forbearance agreement contemplates a procedure by which the government may execute a removal order, notwithstanding the agreement. *See Forbearance Agreement*, 702 F.3d at 162 ("While a petition is pending in this Court, the Government's forbearance policy has assured that removal will not occur. We will assume that forbearance will continue while the case remains with the agency following our remand and during its return to this Court, if that should occur. In the event that the Court and a petitioner are advised at any time that this assumption is unwarranted, the petitioner may promptly apply for a stay of removal.").

Finally, the Second Circuit, itself, has noted the forbearance agreement does not have the same force as a stay of removal. In one case, the Second Circuit denied a stay of removal on the merits but noted "the government's forbearance policy is likely to mean that the government will not remove Sarr pending the resolution of his petition to a merits panel or prior to notifying this Court of its intention to remove Sarr imminently." *Sarr v. Garland*, 50 F.4th 326, 335 (2d Cir. 2022) (citation omitted). In another case in which the Second Circuit certified a question of law to the Connecticut Supreme Court, it specifically noted that it considered the petition to remain pending before the circuit, and therefore the forbearance agreement remained in effect, while the Connecticut Supreme Court decided the issue. *See Efstathiadis v. Holder*, 752 F.3d 591, 599 n.5 (2d Cir. 2014). But it instructed the government to notify the circuit if it disagreed that the forbearance agreement still applied so that the circuit could decide

the pending motion to stay removal. *See id.* These examples demonstrate that the forbearance agreement is not an absolute bar to removal, like a stay would be.

Based on this, the court concludes that the government's agreement to forbear removals while petitions for review are pending in the Second Circuit is a voluntary decision for the government to exercise discretion not to remove a noncitizen during the removal period. It is not equivalent to a court-ordered stay of removal in § 1231(a)(1)(B) that would delay the onset of the removal period.

The practical effect of this holding is that Mr. Gomez Lacayo is being held under § 1231, not § 1226. As a result, he is not statutorily entitled to seek release on bond in a custody redetermination. *See generally Johnson v. Guzman Chavez*, 594 U.S. 523 (2021) (discussing the differences between detention under § 1226 and § 1231). Instead, he must be detained during the 90-day removal period. *See* 8 U.S.C. § 1231(a)(2)(A).

Beyond that, because Gomez Lacayo was removed under 8 U.S.C. § 1227(a)(2), he may be detained beyond the removal period pursuant to § 1231(a)(6), subject to the limitations set forth in *Zadvydas* that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). In recognition of the Executive Branch's primary responsibility in foreign policy matters and the sometimes sensitive nature of repatriation negotiations that may call for difficult judgments regarding whether removal is reasonably foreseeable, the Supreme Court adopted a "presumptively reasonable period of detention" of six months. *Id.* "After this 6–month period, once the alien provides good reason to believe that there is no significant

7

likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."[2] *Id.* at 701.

Therefore, Gomez Lacayo filed his petition when he was still in the 90-day removal period, during which detention is mandatory. Although that period ended on June 15, 2026, he remains in the six-month period of presumptively reasonable detention until September 2026. The fact that the Supreme Court called this a "presumptively reasonable" period, suggests that the reasonableness may be rebutted. However, even if the presumption may be rebutted, Gomez Lacayo has provided no reason to believe his removal to Honduras cannot be carried out.

For these reasons, the court **DENIES** the petition (ECF 1) and **DIRECTS** the clerk to close this case.

SO ORDERED on July 6, 2026.

/s/*Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT

---

[2] With the forbearance agreement, the government is giving up the benefit of the six-month presumptively reasonable detention period described in *Zadvydas*, as the six-month period may run while it is not actively trying to make arrangements for Mr. Gomez Lacayo's removal. The government may be in the position of having to show removal is reasonably foreseeable before any efforts towards removal have begun.